**Mary KILVITIS, Plaintiff,**

v.

**COUNTY OF LUZERNE, Court of Common Pleas of Luzerne County, and James Tupper, District Justice.**

No. 3:CV–98–1824.

United States District Court, M.D. Pennsylvania.

June 25, 1999.

Kimberly D. Boreland, Wilkes—Barre, PA, for plaintiff.

Mary C. Keane, Philadelphia, PA, for defendant.

## MEMORANDUM

VANASKIE, District Judge.

On November 6, 1998, plaintiff Mary Kilvitis (Kilvitis) filed this action against defendants County of Luzerne, Court of Common Pleas of Luzerne County, and District Justice James Tupper (Tupper), contending that the defendants violated her rights under the Family and Medical Leave Act (FMLA), 29 U.S.C. § 2601, *et seq.* (Dkt. Entry 1.) Claims were asserted against each of the defendants under the FMLA and the Civil Rights Act of 1871, 42 U.S.C. § 1983. On February 5, 1999, defendants Court of Common Pleas of Luzerne County and District Justice James Tupper filed a motion for judgment on the pleadings, asserting, *inter alia*, that because they are state instrumentalities, the Eleventh Amendment barred Kilvitis' claims against them. (Dkt. Entry 8.)

Whether the Eleventh Amendment precludes an FMLA action against a state governmental entity is apparently an issue of first impression in this Circuit. The majority of courts in other jurisdictions have concluded that Congress did not effectively abrogate Eleventh Amendment immunity in enacting the FMLA. I find the majority rationale persuasive. Because the FMLA did not effectively abrogate Eleventh Amendment immunity, defendant Court of Common Pleas of Lu-

zerne County's motion for judgment on the pleadings will be granted as to the FMLA claim. For the same reasons, Tupper's motion for judgment on the pleadings will be granted on Kilvitis' official capacity FMLA claim against him. However, because the FMLA provides for individual liability, Tupper's motion for judgment on the pleadings will be denied with respect to Kilvitis' individual capacity FMLA claim against him.

Tupper and Luzerne County Court of Common Pleas have also moved for dismissal of the § 1983 claim. Because the FMLA provides a comprehensive remedial framework, enforcement of alleged FMLA violations through a § 1983 action is foreclosed. Therefore, defendants' motion for judgment on the pleadings will be granted as to Kilvitis' § 1983 claim.

## I. BACKGROUND

Kilvitis was employed by Luzerne County as a secretary in the District Justice system from 1981 through 1990, when she voluntarily left her employment. (Complaint (Dkt. Entry 1) ¶ 12–13.) In 1992, Kilvitis was rehired by Luzerne County and the Court of Common Pleas of Luzerne County as a "floater secretary." (*Id.* ¶ 14.) In August of 1994, Kilvitis was assigned to Tupper's office. (*Id.* ¶ 15.) On September 7, 1996, Kilvitis was diagnosed as suffering from "severe anxiety." (*Id.* ¶ 17.) On September 17, 1996, Kilvitis sought and received medical leave from her employment based upon her medical condition. (*Id.* ¶¶ 18–20, 23.) On October 8, 1996, Kilvitis sought and received an extension of her medical leave time. (*Id.* ¶ 27.)[1] On November 5, 1996, Kilvitis received a third medical certification regarding her condition. (*Id.* Ex. C.)[2] On November 8, 1996, Tupper termi-

---

1. Although the complaint alleges that this occurred in 1998, Exhibit B, which is attached to the complaint, makes clear that her additional medical leave was sought in 1996.

2. Although the complaint alleges that this occurred in 1998, the medical certification is dated 1996. (*Id.* Ex. C.)

nated Kilvitis' employment. (*Id.* Ex. D.)[3]

## II. DISCUSSION

### A. Standard of Review

Under Federal Rule of Civil Procedure 12(c), any party may move for judgment after the pleadings are closed. Under Rule 12(c), a court must accept all factual averments as true and draw all reasonable inferences in favor of the non-moving party. *See Society Hill Civic Ass'n v. Harris,* 632 F.2d 1045, 1054 (3d Cir.1980). In deciding a Rule 12(c) motion, however, a court may take judicial notice of any matter of public record. *Oshiver v. Levin, Fishbein, Sedran & Berman,* 38 F.3d 1380, 1384 (3d Cir.1994). A party moving for judgment on the pleadings under Rule 12(c) must demonstrate that there are no disputed material facts and that judgment should be entered as a matter of law. *See Jablonski v. Pan Am. World Airways, Inc.,* 863 F.2d 289, 290–91 (3d Cir.1988); *Institute for Scientific Info., Inc. v. Gordon & Breach,* 931 F.2d 1002, 1005 (3d Cir.), *cert. denied,* 502 U.S. 909, 112 S.Ct. 302, 116 L.Ed.2d 245 (1991). Judgment may only be entered where "no set of facts could be adduced to support the plaintiff's claim for relief." *Bryson v. Brand Insulations, Inc.,* 621 F.2d 556, 559 (3d Cir.1980).

### B. Defendant Court of Common Pleas of Luzerne County

#### 1. Eleventh Amendment Immunity and the FMLA

The Eleventh Amendment to the Constitution of the United States of America provides:

The Judicial Power of the United States shall not be construed to extend to any suit in law or equity commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

U.S. Const. amend. XI. The Eleventh Amendment prohibits suits against a state by its own citizens or citizens of another state. *Hans v. Louisiana,* 134 U.S. 1, 10 S.Ct. 504, 33 L.Ed. 842 (1890); *see also Thomson v. Ohio State Univ. Hosp.,* 5 F.Supp.2d 574, 576 (S.D.Ohio 1998) ("It is well established that the Eleventh Amendment to the United States Constitution prevents a federal court from entertaining a suit brought by a citizen against his own state.").[4] There are two circumstances in which the Eleventh Amendment will not bar suit against a state: (1) where a state has waived its immunity; and (2) where Congress has abrogated the states' Eleventh Amendment immunity. *See College Sav. Bank v. Florida Prepaid Postsecondary Expense Bd.,* —— U.S. ——, 119 S.Ct. 2219, 2222, —— L.Ed.2d —— (1999); *Driesse v. Florida Bd. of Regents,* 26 F.Supp.2d 1328, 1331 (M.D.Fla.1998); *McGregor v. Goord,* 18 F.Supp.2d 204, 205 (N.D.N.Y.1998); *Thomson,* 5 F.Supp.2d at 576; *Biddlecome v. University of Tex.,* No. 96–1872, 1997 WL 124220, at *2 (S.D.Tex. Mar.13, 1997) (noting that there are only "two specific and deliberate mechanisms" that can abrogate the Eleventh Amendment). Kilvitis has not argued that Pennsylvania has waived its Eleventh Amend-

---

3. The termination letter from Tupper stated: I am sorry to inform you that your position as secretary in my office is terminated as of November 7, 1996. Your last doctor's excuse said you were going to return to work on November 7, 1996. I did not receive any information from you until a letter arrived late Thursday November 7, 1996. The note from your doctor stated you were ready to consider working when your transfer came through. You were previously informed that at the present time a transfer is not an option.

(*Id.* Ex. D.)

4. Kilvitis has not disputed that the Court of Common Pleas, as part of the Commonwealth of Pennsylvania's unified judicial system, is an instrumentality of the Commonwealth of Pennsylvania. Moreover, Kilvitis has conceded that her § 1983 claim against the Court of Common Pleas of Luzerne County should be dismissed. (Pl's Opp. Br. (Dkt. Entry 12) at 2.)

ment sovereign immunity in relation to her claims. Rather, Kilvitis argues that Congress, in passing the FMLA, abrogated Pennsylvania's Eleventh Amendment immunity.

 In order to find that Congress abrogated the states' Eleventh Amendment immunity, a court must find: (1) that Congress has "'unequivocally expresse[d] its intent to abrogate the immunity,'" and (2) that Congress acted pursuant to a valid exercise of its power. *Seminole Tribe of Fla. v. Florida,* 517 U.S. 44, 55, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996); *see also Wheeling & Lake Erie Railway Co. v. Public Utility Comm'n of Pa.,* 141 F.3d 88, 91 (3d Cir.1998); *College Sav. Bank v. Florida Prepaid Postsecondary Ed. Expense Bd.,* 131 F.3d 353, 357 (3d Cir.1997), *aff'd,* — U.S. —, 119 S.Ct. 2219, — L.Ed.2d — (1999). Congressional intent to abrogate must be obvious, *i.e.,* a clear legislative statement. *Seminole Tribe,* 517 U.S. at 55, 116 S.Ct. 1114; *Wheeling,* 141 F.3d at 92; *College Sav. Bank,* 131 F.3d at 357. For instance, in *Seminole Tribe,* the United States Supreme Court determined that the mere fact that Congress had authorized suit against a state in federal court was not sufficient to abrogate the Eleventh Amendment. *Id.* at 56, 116 S.Ct. 1114 (finding such authorization for suit against a state did not evince an "unmistakably clear" intent to abrogate the Eleventh Amendment).

In terms of the FMLA, the definition of an "employer" includes any "public agency" as defined in section 203(x) of Title 29. 29 U.S.C. § 2611(4)(A)(iii). Section 203(x), which is part of the Fair Labor Standards Act (FLSA), provides that a "public agen-

cy" includes "the government of a State or political subdivision thereof; any agency of . . . a State, or political subdivision of a State." 29 U.S.C. § 203(x). Moreover, the FMLA provides an employee with the right to maintain a suit for damages "against any employer (including a public agency) in any Federal or State court of competent jurisdiction." 29 U.S.C. § 2617(a)(2). In considering this language, most district courts have found that these provisions provide sufficient evidence of Congress' intent to abrogate the Eleventh Amendment. *See McGregor,* 18 F.Supp.2d at 207 ("[T]his language functions as a clear statement of congressional intent to abrogate the states' immunity from suit under the Eleventh Amendment."); *Thomson,* 5 F.Supp.2d at 577 ("Congress clearly expressed an intention to abrogate the immunity of state governments to the FMLA when it included state and local governments as proper employer-defendants under the act."); *Biddlecome,* 1997 WL 124220, at *3 ("[T]his Court finds that Congress intended to abrogate state sovereign immunity under the FMLA and that this intent is present in the unmistakable language of the statute itself."); *Jolliffe v. Mitchell,* 986 F.Supp. 339, 342 (W.D.Va.1997) ("The FMLA clearly expresses an intent to abrogate sovereign immunity."); *Knussman v. State of Md.,* 935 F.Supp. 659, 663 (D.Md.1996) (finding unequivocal textual evidence in the FMLA that Congress intended to abrogate the Eleventh Amendment). *But see Driesse,* 26 F.Supp.2d at 1331 ("Congress did not provide a clear statement of intent to abrogate sovereign immunity in the FMLA.").[5]

---

**5.** In *Driesse,* the court stated that the mere inclusion of a state in the definition of an employer did not evince an intent to abrogate the Eleventh Amendment. *Driesse,* 26 F.Supp.2d at 1332. The court noted that the FMLA made no mention of the Eleventh Amendment, as contrasted with the Americans with Disabilities Act, which explicitly stated that states were not immune under the Eleventh Amendment. *Id.* (citing 42 U.S.C. § 12202). Although the court found that a

"permissible inference" could be drawn that Congress intended to abrogate, the court found that this was insufficient. *Id.* ("Plaintiff argues that by construing the definition section with the enforcement provision [of the FMLA], the intent to abrogate is made clear. The need to construe one section of a statute with another, however, is an indication that there is no unequivocal declaration of intent [to abrogate].").

408

Whether Congress evinced an intention to abrogate Eleventh Amendment immunity is a close call. A decision on this issue need not be made, however, because it is clear that, assuming such an intention, congressional abrogation of Eleventh Amendment immunity for FMLA suits exceeded congressional authority.

■ As to whether Congress acted within the scope of its authority, a three-part test must be conducted: (1) whether the statute may be regarded as an enactment to enforce the Equal Protection Clause of the Fourteenth Amendment; (2) whether the statute is plainly adapted to its enforcement goal; and (3) whether the statute is consistent with the Constitution. *Katzenbach v. Morgan,* 384 U.S. 641, 651, 86 S.Ct. 1717, 16 L.Ed.2d 828 (1966); *see also Wheeling,* 141 F.3d at 92.[6]

As to the first part, the language within the FMLA makes clear that Congress intended to invoke the Equal Protection Clause. As recently noted by one court:

In enacting [the] FMLA, Congress sought to promote the stability and economic security of the family "in a manner consistent with the Equal Protection Clause of the Fourteenth Amendment, minimize[ ] the potential for employment discrimination on the basis of sex" and to "promote the goal of equal employment opportunity for women and men."

*McGregor,* 18 F.Supp.2d at 207 (quoting 29 U.S.C. § 2601(b)(4) & (5)). Based upon this language, those courts which have

considered the question have agreed that the FMLA meets the first prong of the *Katzenbach* test. *See Driesse,* 26 F.Supp.2d at 1333 (finding that the FMLA, on its face, provides that it is an attempt to enforce the Equal Protection Clause); *McGregor,* 18 F.Supp.2d at 208 ("These statements show that the FMLA was at least ostensibly an attempt to enforce the Fourteenth Amendment's guarantee of equal protection."); *Thomson,* 5 F.Supp.2d at 578 ("The Court concludes that the FMLA may be regarded, on its face, as an attempt to enforce the Equal Protection Clause.").

■■ In terms of the second prong, it must be determined whether the statute was "plainly adapted" to enforcement of the equal protection clause of the Fourteenth Amendment. Under section 5 of the Fourteenth Amendment,[7] Congress has the power to enforce the Fourteenth Amendment, but, in doing so, cannot change or define substantive law. *See College Sav. Bank,* 119 S.Ct. at 2224 ("[T]he term 'enforce' is to be taken seriously .... [T]he object of valid § 5 legislation must be carefully delimited remediation or prevention of constitutional violations."); *City of Boerne v. Flores,* 521 U.S. 507, 117 S.Ct. 2157, 2164, 138 L.Ed.2d 624 (1997) ("Congress does not enforce a constitutional right by changing what the right is. It has been given the power 'to enforce,' not to determine what constitutes a constitutional violation."); *see also College Sav.*

**6.** Prior to *Seminole Tribe,* there were two bases for congressional abrogation of Eleventh Amendment immunity: (1) the commerce clause; or (2) section 5 of the Fourteenth Amendment. *Seminole Tribe,* 517 U.S. at 59–60, 116 S.Ct. 1114. In *Seminole Tribe,* however, the Court determined that the commerce clause could not be used as a basis to abrogate the Eleventh Amendment. *Id.* at 72–73, 116 S.Ct. 1114 ("The Eleventh Amendment restricts the judicial power under Article III, and Article I [, *i.e.,* the commerce clause] cannot be used to circumvent the constitutional limitations placed upon federal jurisdiction. Petitioner's suit against the State of Florida must be dismissed for a lack of jurisdiction."); *see also Balgowan v. State of*

N.J., 115 F.3d 214, 216 (3d Cir.1997) (*"Seminole ... held that the Commerce Clause did not invest Congress with the authority to waive states' Eleventh Amendment immunity and to create private causes of action against states that had not consented to such suits."*). Thus, after *Seminole Tribe,* only § 5 of the Fourteenth Amendment may be used by Congress to abrogate the Eleventh Amendment. *See College Sav. Bank,* 119 S.Ct. at 2223–24.

**7.** That section provides: "The Congress shall have power to enforce, by appropriate legislation, the provisions of this article." U.S. Const. Amend. XIV, § 5.

*Bank,* 131 F.3d at 359 ("Therefore, while Congress has broad remedial power under the Fourteenth Amendment, it does not have a basis for enacting substantive, non-remedial · measures."); *Thomson,* 5 F.Supp.2d at 579 ("Legislation creating a new substantive right cannot be passed pursuant to the Fourteenth Amendment because Congress' enforcement authority under § 5 is limited to action which is 'remedial and preventive' in nature."). As noted by the United States Supreme Court:

> While the line between measures that remedy or prevent unconstitutional actions and measures that make a substantive change in the governing law is not easy to discern, and Congress must have wide latitude in determining where it lies, the distinction exists and must be observed. *There must be a congruence and proportionality between the injury to be prevented or remedied and the means adopted to that end.*

*City of Boerne,* 117 S.Ct. at 2164 (emphasis added).

■ The FMLA provides 12 weeks of leave to eligible employees, *i.e.,* employees who have been employed for 12 months by an employer for at least 1250 hours. 29 U.S.C. § 2611(2), § 2612(a)(1). An eligible employee may use this 12 week leave period (1) to care for a newborn, adopted or foster child; (2) to care for a spouse, parent, or child who has a serious health condition; or (3) for a personal serious health condition which renders the employee unable to perform his or her work functions. 29 U.S.C. § 2612(a)(1)(A)-(D). The FMLA prohibits an employer from interfering with an eligible employee's use of this leave time. 29 U.S.C. § 2615(a)(1). Congress stated that its purpose was to prevent discrimination against employees who request leave for parenting and caretaking and that women were usually the individuals who suffer such discrimination in the workplace. 29 U.S.C. § 2601(a)(5) & (6).

It must be determined whether the FMLA leave scheme is "plainly adapted" to enforce the goals of the equal protection clause of the Fourteenth Amendment. There must be a "congruence and proportionality" between the means selected by Congress, *i.e.,* the 12 week leave period, and the end, *i.e.,* prevention of gender-based discrimination in the public workplace.

While one of the express purposes of the FMLA is to eliminate gender discrimination in the context of the workplace, it goes beyond its stated goal by imposing substantive employment conditions. As noted by one court:

> The creation by statute of an affirmative entitlement to leave distinguishes the FMLA from other statutory provisions designed to combat discrimination. In effect, Congress, insofar as it purports to rely on the Fourteenth Amendment as the basis of the FMLA, is attempting to dictate that the Equal Protection Clause of the Fourteenth Amendment requires that employees be furnished twelve weeks of leave per year for the reasons set forth in the act. This is patently the sort of substantive legislation that exceeds the proper scope of Congress' authority under § 5.

*Thomson,* 5 F.Supp.2d at 579; *see also Driesse,* 26 F.Supp.2d at 1333 ("Thus, the FMLA mandates that not only are employers required to treat leave requests the same for both men and women, but they are required to provide a valuable economic benefit in the form of twelve weeks of leave."); *McGregor,* 18 F.Supp.2d at 208 ("[R]ather than enforcing the Equal Protection Clause, the FMLA attempts to define what equal protection means: twelve weeks of leave for eligible employees for the purposes enumerated in the statute. It goes without saying that no such entitlement is found in any of the provisions of the Fourteenth Amendment ...."). The FMLA creates a statutory entitlement and any violation, whether intentional or not, may form the basis of a claim against an

employer. In other words, the employer's state of mind, *i.e.,* intent to discriminate, is not relevant. *See Hodgens v. General Dynamics Corp.,* 144 F.3d 151, 159 (1st Cir. 1998) ("Because the issue is the right to an entitlement [under the FMLA], the employee is due the benefit if the statutory requirements are satisfied, regardless of the intent of the employer."). In this respect, the FMLA actually exceeds the equal protection clause, which prohibits only *intentional* discrimination. *McGregor,* 18 F.Supp.2d at 208–09. Therefore, it is clear that Congress did more than attempt to enforce the Equal Protection Clause when it enacted the FMLA; rather, Congress created a statutory entitlement to 12 weeks of leave for eligible employees.

Congruence and proportionality are plainly lacking. Congress has already provided a cause of action for gender discrimination in employment decisions under Title VII. Moreover, gender discrimination by a state employer is actionable under 42 U.S.C. § 1983. The FMLA does not add anything to the existing prohibitions against gender discrimination, except to the extent that it creates a statutory entitlement to 12 weeks of leave. As noted in *Thomson:*

> In other words, not only is the affirmative entitlement created by the FMLA disproportionate in that it creates rights instead of just protecting the right of equal treatment under the Equal Protection Clause, but it is also unnecessary because employees of the state already have available a direct avenue of legal recourse for deprivations of equal protection. Congress has already met the legitimate goals of remedying and preventing constitutional violations of this type by its passage of prior legislation.

*See Thomson,* 5 F.Supp.2d at 579; *see also Driesse,* 26 F.Supp.2d at 1333 (same).

Finally, as to the third prong of the *Katzenbach* test, the FMLA infringes upon an area traditionally left to the states—the relationship between states and their employees. "If the FMLA was applicable to states, it would require state employers to find replacements for employees who are on leave or suffer a decrease in productivity as a result of a reduced workforce." *Driesse,* 26 F.Supp.2d at 1334. Such interference with state employment relationships "runs afoul of the spirit of the Constitution and the concept of federalism which it contains." *Thomson,* 5 F.Supp.2d at 581; *see also Driesse,* 26 F.Supp.2d at 1334 (same); *McGregor,* 18 F.Supp.2d at 209 (same).

Three district court decisions have determined that the FMLA abrogates the Eleventh Amendment. *See Biddlecome,* 1997 WL 124220, at *3; *Jolliffe,* 986 F.Supp. at 342–43; *Knussman,* 935 F.Supp. at 663. In *Knussman,* the court only considered whether Congress expressed its intent to abrogate the Eleventh Amendment. In particular, the court noted that the parties had not briefed or argued whether Congress had acted pursuant to a valid exercise of power. *Knussman,* 935 F.Supp. at 663. Therefore, *Knussman* did not conduct the full *Katzenbach* analysis. Likewise, neither *Biddlecome* nor *Jolliffe* addressed whether Congress had acted within the scope of its constitutional authority. For this reason, *Thomson,* the first court to consider whether Congress had acted pursuant to valid authority, determined that *Biddlecome, Jolliffe* and *Knussman* were not controlling. Furthermore, every published district court decision after *Thomson* has determined that an attempt to abrogate the Eleventh Amendment through the FMLA was outside congressional authority. *See Sims v. University of Cincinnati,* No. 96–746, 1999 WL 221107, at *4 (S.D.Ohio Feb. 24, 1999) ("This court has examined the decisions which have addressed the issue of whether Congress effectively abrogated states' immunity from suit under the FMLA. The court finds the reasoning in *Thomson* and like decisions to be sound and more persuasive than the reasoning underlying the contrary deci-

sions of *Knussman, Biddlecome,* and *Jolliffe.*"); *Post v. State of Kan.,* No. 98–1238, 1998 WL 928677, at *3 (D.Kan. Dec.10, 1998) ("Of the district courts which have now considered the issue, the majority and all of the more recent cases have concluded that the Eleventh Amendment bars FMLA claims against state agencies. The court concurs with this view . . . ." (citations omitted)); *Driesse,* 26 F.Supp.2d at 1334 (following *Thomson* and finding that *Knussman, Jolliffe,* and *Biddlecome* failed to conduct the proper analysis); *McGregor,* 18 F.Supp.2d at 208–09 (following *Thomson* ).

I find the majority view to rest upon a more thorough analysis of the *Katzenbach* factors and to be better reasoned than *Knussman, Biddlecome* and *Jolliffe.* I thus join with the majority of courts and find that, absent a valid waiver, an instrumentality of the state may not be sued in federal court for an alleged violation of the FMLA. Therefore, defendant Court of Common Pleas of Luzerne County's motion for judgment on the pleadings will be granted.

## C. Defendant District Justice James Tupper

### 1. Official Capacity Claim under the FMLA

■ For the reasons set forth in relation to the claim against defendant Court of Common Pleas of Luzerne County, any FMLA claim against Tupper in his official capacity would be barred by the Eleventh Amendment. *See Hafer v. Melo,* 502 U.S. 21, 25, 112 S.Ct. 358, 116 L.Ed.2d 301 (1991) ("Suits against state officials in their official capacity therefore should be treated as suits against the State."); *Edelman v. Jordan,* 415 U.S. 651, 663, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974) ("[A] suit by a private party seeking to impose liability which must be paid from public funds in the state treasury is barred by the Eleventh Amendment."); *West v. Keve,* 571 F.2d 158 (3d Cir.1978) ("[T]he Eleventh Amendment bars damage suits against a

state or against state officials in their official capacity when the damages will have to be paid with state funds."); *Larsen v. Senate of the Commonwealth of Pa.,* 965 F.Supp. 607, 611 (M.D.Pa.1997) (finding that Eleventh Amendment barred "official capacity" claims against employees of the Administrative Office of the Pennsylvania Courts); *Jimenez v. Lakelands Racing Ass'n, Inc.,* 567 F.Supp. 1298, 1303 (W.D.Pa.1983) ("An action against Commonwealth officials sued in their official capacities is barred by the Eleventh Amendment for the reason that any damages would have to be paid out of state funds."). Therefore, Tupper's motion for judgment on the pleadings on the FMLA claim against Tupper in his official capacity will be granted.

### 2. Individual Capacity Claim under the FMLA

■ Tupper contends that Kilvitis' complaint does not make any specific allegations that would support an individual capacity claim because all of Kilvitis' claims relate to actions taken in Tupper's official capacity. In other words, Tupper maintains that any liability against him must be in his official capacity. A similar argument was rejected in *Hafer v. Melo, supra.* In *Hafer,* the Pennsylvania Auditor General contended that she could not be held liable under § 1983 in connection with the firing of some employees. 502 U.S. at 27–28, 112 S.Ct. 358. She argued that because she had acted within the scope of her authority, any suit against her had to be in her "official" capacity. The Court rejected this approach, explaining that it ignored congressional intent in enacting § 1983 " 'to enforce provisions of the Fourteenth Amendment against those who carry a badge of authority of a State and represent it in some capacity, whether they act in accordance with their authority or misused it.' " *Id.* at 28, 112 S.Ct. 358.

The pertinent inquiry here, therefore, is whether Congress has imposed liability on an individual in his or her personal capaci-

ty. To answer this question, the terms of the FMLA must be examined. The FMLA defines an "employer" as, *inter alia,* "any person who acts directly or indirectly in the interest of an employer to any of the employees of such employer." 29 U.S.C. § 2611(4)(A)(ii)(*l*). Thus, the plain language of the FMLA evinces an intent to provide for individual liability. *See Meara v. Bennett,* 27 F.Supp.2d 288, 291 (D.Mass. 1998) ("This language clearly suggests that individuals *are* contemplated as defendants under [the FMLA]." (emphasis in original)).

The FMLA tracks the statutory language of the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201, *et seq.* The FLSA defines an "employer" as including "any person acting directly or indirectly in the interest of an employer in relation to an employee ...." 29 U.S.C. § 203(d). The implementing regulations under the FMLA recognize that the FMLA and FLSA provide the same definition of employer, and the regulations instruct that individual liability arises under the FMLA. 29 C.F.R. § 825.104(d). Relying upon the plain language of the statute and the directive contained in the regulations, the majority of courts have looked to FLSA individual liability case law and determined that individual liability exists under the FMLA. *See Meara,* 27 F.Supp.2d at 291 ("Although the court has not been able to locate any Court of Appeals decisions addressing the issue of individual liability under the recently-enacted FMLA, the decisional law developing at the district court level favors individual liability."); *Divizio v. Elmwood Care, Inc.,* No. 97–8365, 1998 WL 292982, at *3 (N.D.Ill. May 28, 1998) (finding that supervisor who exercises control over employee's leave may be held individually liable under the FMLA); *Bryant v. Delbar Prods., Inc.,* 18 F.Supp.2d 799, 808 (M.D.Tenn.1998) (noting that majority of courts have determined that FMLA extends individual liability to those who control a plaintiff's ability to take a leave of absence); *Mercer v. Borden,* 11 F.Supp.2d 1190 (C.D.Cal. 1998) ("Since the definition of 'employer' in the FMLA is identical to the definition of 'employer' in the FLSA, the Court holds that individuals are potentially subject to liability under the FMLA. The plain language of the FMLA appears to compel this result."); *Rupnow v. TRC, Inc.,* 999 F.Supp. 1047, 1048 (N.D.Ohio 1998) ("A review of the district court cases cited by the parties indicates that the weight of authority favors individual liability for a supervisor where the supervisor 'exercise[s] sufficient control over plaintiff's ability to take protected leave' "); *Beyer v. Elkay Mfg., Co.,* No. 97–50067, 1997 WL 587487, at *3 (N.D.Ill. Sept.19, 1997) ("[S]upervisors may be individually liable under FMLA if they had some control over plaintiff's ability to take protected leave."); *Stubl v. T.A. Sys., Inc.,* 984 F.Supp. 1075, 1085 (E.D.Mich.1997) ("Although reasonable arguments could be made that the policy rationale underlying the Title VII decisions finding no individual liability should dictate the same result under the FMLA, the plain language of the statute and the regulations mandate otherwise."); *Holt v. Welch Allyn, Inc.,* No. 95–1135, 1997 WL 210420, at *2 (N.D.N.Y. Apr.15, 1997) (finding individual liability under the FMLA where supervisor exercises control over plaintiff's leave time); *Norris v. North Am. Publ'g Co.,* No. 96–8662, 1997 WL 102520, at *1 (E.D.Pa. Feb.27, 1997) (finding that "persons acting directly or indirectly in the interest of an employer can be held liable under the [FMLA]"); *Waters v. Baldwin County,* 936 F.Supp. 860, 863–864 (S.D.Ala.1996) (finding individual liability under the FMLA in accord with FLSA individual liability decisions); *Knussman,* 935 F.Supp. at 664 ("[L]iability of individual defendants in their individual capacities is not foreclosed under the FMLA."); *Johnson v. A.P. Prods., Ltd.,* 934 F.Supp. 625, 629 (S.D.N.Y.1996) (following FLSA case law to determine individual liability exists under the FMLA where supervisor exercised control over plaintiff's ability to

take leave); *Freemon v. Foley*, 911 F.Supp. 326, 332 (N.D.Ill.1995) ("[B]ecause of the expansive interpretation given to the term 'employer' in the FLSA, we believe the FMLA extends to all those who controlled 'in whole or in part' [the plaintiff's] ability to take a leave of absence and return to her position."); *Reich v. Midwest Plastic Eng'g, Inc.*, No. 94–525, 1995 WL 478884, at *6 (W.D. Mich. June 6, 1995) (same); *McKiernan v. Smith–Edwards–Dunlap Co.*, No. 95–1175, 1995 WL 311393, at *3 (E.D.Pa. May 17, 1995) (interpreting the FMLA in accord with FLSA case law which allowed for individual liability); Note, "Individual Liability as an 'Employer' under the Family and Medical Leave Act," 22 Am. J. Trial Advoc. 449 (1998) ("Although policy reasons may exist that individual liability under the FMLA should follow Title VII [which does not provide for it], the plain language and clearly stated congressional purposes of the FMLA require otherwise.").

A few district courts have concluded that the FMLA does not provide for individual liability. *See Carter v. Rental Uniform Serv. of Culpeper, Inc.*, 977 F.Supp. 753, 759 (W.D.Va.1997) (following Title VII case law and finding no individual liability under the FMLA); *Frizzell v. Southwest Motor Freight, Inc.*, 906 F.Supp. 441, 449 (E.D.Tenn.1995) (same). In *Carter*, the court recognized the similarity between the FMLA and the FLSA and that individual liability was permitted under the FLSA if the individual defendant controlled the conditions and terms of the plaintiff's employment. In *Carter*, however, the plaintiff's complaint failed to allege that the individual defendant had such control over the plaintiff's employment. *Car-*

*ter*, 977 F.Supp. at 759–60. In this case, Kilvitis has clearly alleged that Tupper had control over her employment. In particular, Tupper personally wrote a letter to Kilvitis informing her that her employment had been terminated. Thus, this case presents a different factual scenario than that presented in *Carter*.[8]

Although the Third Circuit has not addressed this issue in the context of the FMLA, the Third Circuit has indicated that there can be more than one "employer" under the FLSA. *See Hodgson v. Arnheim & Neely, Inc.*, 444 F.2d 609, 611–12 (3d Cir.1971) (finding that a real estate management company which hired employees and determined the terms of employment, but did not own the property, could be an employer under FLSA), *rev'd on other grounds*, 410 U.S. 512, 93 S.Ct. 1138, 35 L.Ed.2d 463 (1973). Other courts in this Circuit have followed the majority rule allowing individually liability under the FLSA where a supervisor has sufficient control over the conditions and terms of the plaintiff's employment. *See Dole v. Haulaway, Inc.*, 723 F.Supp. 274, 286 (D.N.J.1989) ("A corporate officer with operational control is an 'employer,' along with the corporation, jointly and severally liable under the [FLSA] for unpaid wages. Further, any such corporate officer is liable in his individual, not representative, capacity."), *aff'd mem.*, 914 F.2d 242 (3d Cir.1990), *cert. denied*, 499 U.S. 936, 111 S.Ct. 1388, 113 L.Ed.2d 445 (1991); *Dole v. Solid Waste Servs., Inc.*, 733 F.Supp. 895, 923 (E.D.Pa.1989) ("'The overwhelming weight of authority is that a corporate officer with operational control of a corporation's covered enterprise is an employer along with the corporation, jointly and sev-

---

**8.** In *Frizzell*, the court adopted the reasoning of *Arnold v. Welch*, No. 92–562, 1995 WL 785572 (E.D.Tenn. July 5, 1995), in finding that "the term 'employer' as used in the [FMLA] should be construed the same as the term 'employer' is construed under Title VII." *Frizzell*, 906 F.Supp. at 449. *Arnold*, however, addressed individual liability under the Tennessee Human Rights Act, not individual liability under the FMLA or the FLSA. *Arnold*,

1995 WL 785572, at *2.) Moreover, *Frizzell* did not even consider the significance of the similar definition of "employer" under the FLSA and the FMLA or the regulatory interpretation that individual liability exists under the FMLA. Finally, recently, another district court in Tennessee rejected *Frizzell* and found individual liability under the FMLA. *See Bryant*, 18 F.Supp.2d at 807. In short, *Frizzell* is not persuasive.

erally liable under [the FLSA] for unpaid wages.'"), *aff'd mem.* 897 F.2d 521 (3d Cir.), *cert. denied,* 497 U.S. 1024, 110 S.Ct. 3271, 111 L.Ed.2d 781 (1990); *Avalos v. La Conca D'Oro, Inc.,* No. 87–4980, 1987 WL 19894, at \*3 (E.D.Pa. Nov.16, 1987) (noting that FLSA precedents allow for individual liability where a supervisor had "sufficient control of the terms and conditions of employment"). It is also clear that the majority of courts in other jurisdictions have concluded that individual liability is permitted under the FLSA provided that the individual defendant had sufficient control over the terms of the plaintiff's employment. *See, e.g., Baystate Alternative Staffing, Inc. v. Herman,* 163 F.3d 668, 678–79 (1st Cir.1998) (finding that supervisory authority not sufficient for individual liability under the FLSA, rather the individual defendant must have control over the work situation coupled with personal responsibility for the decision that violated the FLSA); *United States Dep't of Labor v. Cole Enters., Inc.,* 62 F.3d 775, 778 (6th Cir.1995) (finding individual defendant liable under the FLSA where he had power over hiring, firing, rates of pay, schedule, and payroll); *Fegley v. Higgins,* 19 F.3d 1126, 1131 (6th Cir.) (applying the "economic reality" test to determine whether an individual defendant qualified as an "employer" under the FLSA), *cert. denied,* 513 U.S. 875, 115 S.Ct. 203, 130 L.Ed.2d 134 (1994); *Reich v. Circle C. Investments, Inc.,* 998 F.2d 324, 329 (5th Cir.1993) ("This court has held that the FLSA's definition of employer is 'sufficiently broad to encompass an individual who, though lacking a possessory interest in the 'employer' corporation, effectively dominates its administration or otherwise acts, or has the power to act on behalf of the corporation vis-a-vis its employees."); *Miller v. Maxwell's Int'l Inc.,* 991 F.2d 583, 589 (9th Cir.1993) (Fletcher, J., dissenting) ("There can be no question that an individual can be personally liable as an employer under

the FLSA; adverse employment actions attributable to individuals as a consequence of their authority over employment decisions can lead to individual liability where those actions violate the FLSA."), *cert. denied,* 510 U.S. 1109, 114 S.Ct. 1049, 127 L.Ed.2d 372 (1994); *Brock v. Hamad,* 867 F.2d 804, 808 n. 6 (4th Cir.1989) (finding individual defendant with power to hire and direct employees was an "employer" under the FLSA); *Duncan v. Perdue,* 988 F.Supp. 992, 994 (W.D.Va.1997) (finding that individual defendant was an employer under FLSA where he was sole owner and chief executive officer of company). Therefore, the case law plainly allows for individual liability under the FLSA. Given the similarity between the definition of an "employer" under the FLSA and the FMLA, the regulatory determination that individual liability exists under the FMLA, and the growing case law that permits individual liability under the FMLA, I find that the FMLA permits individual liability.

Tupper relies upon a recent decision from the Eleventh Circuit, *Wascura v. Carver,* 169 F.3d 683 (11th Cir.1999), in which the court addressed whether the term "employer" under the FMLA encompassed a public official in his or her individual capacity.[9] The court concurred with the assessment that it was necessary to consider FLSA case law to determine the potential scope of individual liability under the FMLA. In this regard, the court relied upon *Welch v. Laney,* 57 F.3d 1004 (11th Cir.1995), in which the court had concluded that a local sheriff was not an "employer" under the FLSA when he acted in his individual capacity because the sheriff had no control over the plaintiff's employment when acting in his individual capacity. *Wascura,* 169 F.3d at 686. Thus, the court concluded that *"Welch* establishes as the law of this circuit that a public official sued in his individual capacity is not an 'employer' subject to individual

---

9. *Wascura* appears to be the first court of appeals to address the individual liability of a public official under the FMLA.

liability under the FLSA. Because 'employer' is defined the same way in the FMLA and the FLSA, *Welch* controls." *Id.* Based upon this reasoning, the court dismissed the FMLA individual capacity claim. *Id.* at 687.

In *Welch,* the plaintiff, an employee of a county sheriff's department, had sued the sheriff and a deputy sheriff in both their individual and official capacities, and the County Commissioners in their official capacities for, *inter alia,* alleged violations of the Equal Pay Act, 29 U.S.C. § 206. The FLSA definition of "employer" applies to the Equal Pay Act. The Eleventh Circuit recognized the prevailing view that individual liability under the FLSA requires an assessment of the "total employment situation," with consideration given to such factors as "whether or not the employment [took] place on the premises of the [alleged employer]; how much control [did] the [alleged employer] exert on the employees; and [did] the [alleged employer] have the power to hire, fire or modify the employment condition of the employees." *Welch,* 57 F.3d at 1011 (quoting *Wirtz v. Lone Star Steel Co.,* 405 F.2d 668, 669–70 (5th Cir.1968)). As to the County Commissioners, the court found that they had no control over the plaintiff's employment and thus could not be regarded as her employer. The court reached the same conclusion as to the deputy sheriff. As to the sheriff, the court found that he could be sued in his "official capacity" as the plaintiff's employer, but not in his individual capacity. As to this latter determination, the court did not reference *Hafer v. Melo, supra.* Nor did it cite to any other authority, but simply observed that the sheriff in his individual capacity "had no control over [plaintiff's] employment and does not qualify as Welch's employer under the [Equal Pay] Act." *Welch,* 57 F.3d at 1011.

As noted above, a person acting under the color of state law may be sued under § 1983 in his or her individual capacity for conduct that is well within his or her official duties. *See Hafer, supra.* The Elev-enth Amendment affords no shield from a suit in federal court against a state official sued in his individual capacity for a violation of 42 U.S.C. § 1983 committed in the course and scope of the state actor's job responsibilities. *See Piecknick v. Commonwealth of Pa.,* 36 F.3d 1250, 1255 n. 7 (3d Cir.1994).

There appears to be no rational basis for distinguishing between a state official's amenability to suit in an "individual capacity" based upon the federal statute allegedly violated. If Congress had made the state actor subject to suit under a particular legislative enactment, then that person may be sued in his or her "individual capacity" regardless of the fact that the alleged liability-creating conduct was part of the defendant's "official duties." This is the lesson of *Hafer.*

Furthermore, the fact that a public official derives authority from a state statute should not result in a different outcome for public officials as opposed to private supervisors and managers. No rational basis exists for distinguishing between supervisory authority conferred by statute and that conferred by the corporate structure. In the private sector, under *Welch*'s rationale, an individual supervisor cannot be liable under the FLSA in his or her individual capacity because such supervisor would not be clothed with the corporate authority when acting in his or her individual capacity.

Other courts have held that public officials can be sued in their individual capacities for alleged violations of both the FLSA and the FMLA. *See, e.g., Baker v. Stone County,* 41 F.Supp.2d 965, 978–81 (W.D.Mo.1999) (finding county sheriff subject to individual liability as an "employer" under the FLSA); *Meara,* 27 F.Supp.2d at 291 (finding district attorney subject to individual liability as an "employer" under the FMLA); *Barfield v. Madison County,* 984 F.Supp. 491, 499 (S.D.Miss.1997) (finding county sheriff subject to individual liability as an "employer" under the FLSA); *Waters,* 936 F.Supp. at 863–64 (finding

county supervisors subject to individual liability as "employers" under the FMLA); *Knussman,* 935 F.Supp. at ·664 (finding state police officials subject to individual liability as "employers" under the FMLA). I find these decisions consistent with *Hafer* and the legislative scheme; *Welch* and *Wascura* are not.

In considering the pleadings in a light most favorable to Kilvitis, she has present‑ed sufficient facts to support her claim that Tupper was her "employer" under the FMLA. In this regard, attached to the complaint is a copy of Kilvitis' termination letter signed by Tupper. Additional discovery is necessary in order to determine the extent of Tupper's control over the terms and conditions of Kilvitis' employment. Therefore, Tupper's motion for judgment on the pleadings on Kilvitis' individual liability FMLA claim will be denied.[10]

3. Section 1983 Claim for Violations of the FMLA[11]

 Recently, the United States Supreme Court reiterated the factors to be considered in determining whether a federal statute confers a right enforceable under § 1983:

> In order to seek redress through § 1983, ... a plaintiff must assert the violation of a federal *right,* not merely a violation of federal *law.* We have traditionally looked at three factors when determining whether a particular statutory provision gives rise to a federal right. First, Congress must have intended that the provision in question benefit the plaintiff. Second, the plaintiff must demonstrate that the right assertedly protected by the statute is not

so "vague and amorphous" that its enforcement would strain judicial competence. Third, the statute must unambiguously impose a binding obligation on the States. In other words, the provision giving rise to the asserted right must be couched in mandatory rather than precatory terms.

> Even if a plaintiff demonstrates that a federal statute creates an individual right, there is only a rebuttable presumption that the right is enforceable under § 1983. Because our inquiry focuses on congressional intent, dismissal is proper if Congress "specifically foreclosed a remedy under § 1983." Congress may do so expressly, forbidding recourse to § 1983 in the statute itself, or impliedly, by creating a comprehensive enforcement scheme that is incompatible with individual enforcement under § 1983.

*Blessing v. Freestone,* 520 U.S. 329, 340–41, 117 S.Ct. 1353, 137 L.Ed.2d 569 (1997) (citations omitted).

 It is clear that the FMLA was intended to benefit employees such as Kilvitis. 29 U.S.C. § 2601(a)(4) ("[T]here is inadequate job security for employees who have serious health conditions that prevent them from working for temporary periods."). Moreover, the FMLA specifically provides for a private cause of action "to recover damages or equitable relief ... in any Federal or State court of competent jurisdiction." 29 U.S.C. § 2617(a)(2). Given that federal courts were provided with jurisdiction to enforce violations of the FMLA, it is clear that Congress understood that federal courts were competent to protect the rights conferred under the

---

**10.** Discovery may reveal that Tupper does not qualify as Kilvitis' employer under the FMLA. Moreover, the defense of qualified immunity may be applicable here. Thus, Tupper is not precluded from moving for summary judgment on these grounds following the completion of pertinent discovery.

**11.** Neither party addressed the viability of a § 1983 claim based upon an alleged violation

of the FMLA. Because a court may *sua sponte* raise the question of whether a viable claim has been pleaded, *see, e.g., Bryson v. Brand Insulations, Inc.,* 621 F.2d 556, 559 (3d Cir. 1980); 5A Charles A. Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1357, at 301 (2d Ed.1990), the question of whether the FMLA confers a right enforceable under § 1983 will be considered.

FMLA. As to the final factor, it is apparent that the FMLA places mandatory requirements upon state employers, *i.e.*, state employers are not permitted to interfere with the FMLA's 12 weeks of unpaid leave to eligible employees.

Congress has not expressly foreclosed a § 1983 action based upon a violation of the FMLA. Thus, the question arises as to whether the FMLA creates a "comprehensive enforcement scheme that is incompatible with individual enforcement under § 1983." *Blessing,* 520 U.S. at 341, 117 S.Ct. 1353.

On only two occasions has the United States Supreme Court "found a remedial scheme sufficiently comprehensive to supplant § 1983." *Blessing,* 520 U.S. at 347, 117 S.Ct. 1353 (citing *Smith v. Robinson,* 468 U.S. 992, 104 S.Ct. 3457, 82 L.Ed.2d 746 (1984) and *Middlesex County Sewerage Auth. v. National Sea Clammers Ass'n,* 453 U.S. 1, 101 S.Ct. 2615, 69 L.Ed.2d 435 (1981)). In *Smith v. Robinson,* the Court determined that the Education of the Handicapped Act established:

> an elaborate procedural mechanism to protect the rights of handicapped children. The procedures not only ensure that hearings conducted by the State are fair and adequate. They also effect Congress' intent that each child's individual educational needs be worked out through a process that begins on the local level and includes ongoing parental safeguards, and a right to judicial review.

*Id.* at 1010–11, 104 S.Ct. 3457. Given the comprehensive nature of the "procedures and guarantees" set forth in the Education of Handicapped Act, the Court determined that Congress did not intend for § 1983 to be used to enforce that act. *Id.* at 1012, 104 S.Ct. 3457 ("Allowing a plaintiff to circumvent the EHA administrative remedies would be inconsistent with Congress' carefully tailored scheme.").[12]

In *Sea Clammers,* the plaintiffs attempted to assert a § 1983 claim based upon a violation of the Federal Water Pollution Control Act. The Court found that the Act contained "unusually elaborate enforcement provisions, conferring authority to sue for this purpose both on government officials and private citizens." *Sea Clammers,* 453 U.S. at 13, 101 S.Ct. 2615. First, it provided that the Environmental Protection Agency could respond to violations of the Act by seeking compliance orders and civil suits. *Id.* Moreover, it provided that any "interested party" could seek judicial review in the courts of appeals for action taken by the Environmental Protection Agency. *Id.* at 13–14, 101 S.Ct. 2615. The Act also provided "citizen-suit provisions" which allowed a private citizen to sue for injunctive relief. *Id.* at 14, 101 S.Ct. 2615. Because of the elaborate enforcement provision, the Court determined that Congress did not intend to allow citizens to seek enforcement of the Act through a § 1983 action. *Id.* at 21, 101 S.Ct. 2615 ("We therefore conclude that the existence of these express remedies demonstrates not only that Congress intended to foreclose implied private actions but also that it intended to supplant any remedy that otherwise would be available under § 1983.").[13]

12. "In response to *Smith,* Congress amended the EHA to add § 1415(f), a provision which establishes that the statute's provisions are not the sole means for redress available to disabled children and their parents." *W.B. v. Matula,* 67 F.3d 484, 493 (3d Cir.1995). In *Matula,* the Third Circuit determined that *Smith* had been overruled by congressional action. *Id.* at 494. ("We have previously characterized the enactment of § 1415(f) as overruling *Smith.* Far from inferring a congressional intent to *prevent* § 1983 actions predicated on [the Individuals with Disabilities Education Act] then, we conclude that Congress explicitly *approved* such actions." (citation omitted)).

13. In contrast, the United States Supreme Court recently determined in *Blessing* that Title IV–D of the Social Security Act was not so comprehensive as to preclude a § 1983 action. In particular, the court found it significant that, unlike the procedural safeguards in *Robinson* and *Sea Clammers,* a "private actor" could not bring an action to enforce

Thus, the existence of private judicial remedies is significant in making a determination as to the comprehensive nature of a remedial scheme. In *Wright v. City of Roanoke Redevelopment & Housing Authority,* 479 U.S. 418, 107 S.Ct. 766, 93 L.Ed.2d 781 (1987), the United States Supreme Court determined that tenants *could* maintain a § 1983 action for violations of the Housing Act. In pertinent part, the Court stated:

> In both Sea Clammers and Smith v. Robinson, *the statutes at issue themselves provided for private judicial remedies, thereby evidencing congressional intent to supplant the § 1983 remedy.* There is nothing of that kind found in the Brooke Amendment or elsewhere in the Housing Act. Indeed, the only private remedy provided for is the local grievance procedures which the Act now requires.

*Id.* at 427, 107 S.Ct. 766 (emphasis added); *see also Farley v. Philadelphia Hous. Auth.,* 102 F.3d 697, 703 (3d Cir.1996) ("The Supreme Court has held that in enacting the U.S. Housing Act, Congress did not specifically foreclose a § 1983 remedy by enactment of a comprehensive scheme of remedial mechanisms.").

Thus, the application of *Smith* and *Sea Clammers* to this case turns upon whether Congress provided for private judicial remedies within the FMLA. Congress clearly did so. As recently noted by one court:

> [The FMLA] sets forth in detail the specific remedies available for a violation of the FMLA. An employer is liable for damages in the amount of any wages, salary, employment benefits, or other compensation denied or lost to such employee by reason of the violation. If no wages, salary, employment benefits, or other compensation have been lost, the employee can recover any monetary loss "such as the cost of providing care up to a sum equal to 12 weeks of salary for the employee." [29 U.S.C.]

the provisions of Title IV–D. *Blessing,* 520

§ 2617(a)(1)(A)(i). The employee also can recover interest on the above amounts calculated at the prevailing rate, § 2617(a)(1)(A)(ii), and an additional amount as liquidated damages equal to the sum of the amounts described in § 2617(a)(1)(A)(i) and (ii), but the court may, in its discretion, not allow liquidated damages if the court is satisfied that the violation "was in good faith and that the employer had reasonable grounds for believing that the act or omission was not a violation of § 2615 of this title." 29 U.S.C. § 2617(a)(1)(A)(iii). The employee also may obtain "such equitable relief as may be appropriate; including employment, reinstatement, and promotion," § 2617(a)(1)(B), and may recover "a reasonable attorney's fee, reasonable expert witness fees, and other costs of the action." § 2617(A)(3).

This Court agrees with the conclusion reached [by other courts] that the comprehensive detailed enforcement provisions of the FMLA show an intention of Congress that the specific remedies set forth in § 2617 be the exclusive remedies available for a violation of the FMLA.

*O'Hara v. Mt. Vernon Bd. of Educ.,* 16 F.Supp.2d 868, 894 (S.D.Ohio 1998); *see also Desrochers v. Hilton Hotels Corp.,* 28 F.Supp.2d 693, 695 (D.Mass.1998) ("This Court accepts the cogent reasoning of the courts that have barred the Section 1983 claims: the comprehensive detailed enforcement provisions of the FMLA show Congress' intention that the specific remedies set forth in Section 2617 of the FMLA are the exclusive remedies for the violation of the FMLA."); *Jolliffe v. Mitchell,* 971 F.Supp. 1039, 1045 (W.D.Va.1997) ("Because the injuries to which the [FMLA] applies are narrowly drawn and the remedies provided fully cover those injuries, . . . the FMLA provides a comprehensive enforcement scheme which forecloses a section 1983 claim."); *Clay v. City of Chi-*

U.S. at 348, 117 S.Ct. 1353.

*cago, Dep't of Health,* No. 96–3684, 1996 WL 613164, at *2 (N.D.Ill. Oct. 22, 1996) (same)[14]

In accord with these cases, I find that the FMLA provides a comprehensive remedial measures that evinces Congress' intent to foreclose the use of a § 1983 action.[15] Therefore, Tupper's motion for judgment on the pleadings on Kilvitis' § 1983 claim will be granted.[16]

## III. CONCLUSION

The FMLA cannot be viewed as a valid attempt to enforce the equal protection clause of the Fourteenth Amendment. Therefore, defendant Court of Common Pleas of Luzerne County's motion for judgment on the pleadings will be granted on the FMLA claim. Moreover, Kilvitis has conceded that the Eleventh Amendment bars her § 1983 claim against Defendant Court of Common Pleas of Luzerne County.

For the same reasons that the judgment will be entered in favor of Defendant Court of Common Pleas of Luzerne County on the FMLA claim, Tupper's motion for judgment on the pleadings will be granted in relation to Kilvitis' official capacity FMLA claim against him. In terms of the § 1983 claim based upon alleged violations of the FMLA, Tupper's motion for judgment on the pleadings will be granted because the comprehensive reme-

dial scheme established under the FMLA forecloses § 1983 actions for alleged FMLA violations. Finally, as to Kilvitis' individual capacity FMLA claim, Tupper's motion for judgment on the pleadings will be denied. Discovery is necessary to determine whether Tupper qualifies as an employer under the FMLA. An appropriate Order is attached.

## ORDER

NOW, therefore, in accordance with the attached Memorandum, IT IS HEREBY ORDERED THAT:

1) Defendants' motion for judgment on the pleadings (Dkt. Entry 8) is GRANTED IN PART AND DENIED IN PART.

2) The Clerk of Court is directed to enter judgment in favor of defendant Court of Common Pleas of Luzerne County and against the plaintiff, and the Court of Common Pleas of Luzerne County is dismissed from this action.

3) The Clerk of Court is directed to enter judgment in favor of defendants County of Luzerne and James Tupper and against the plaintiff on Count 2 of plaintiff's complaint.

4) The Clerk of Court is directed to enter judgment in favor of defendant James Tupper and against plaintiff on Count 1 to the extent that Count 1 asserts an official capacity claim.

14. The only case to determine that the FMLA fails to provide a comprehensive remedial scheme that forecloses a § 1983 claim is *Peterson v. Slidell Memorial Hospital & Medical Center,* No. 96–2487, 1996 WL 732840 (E.D.La. Dec.16, 1996). As noted in *Desrochers,* the court in *Peterson* provided "no explanation or analysis" for its determination that a § 1983 claim could be maintained for a violation of the FMLA. 28 F.Supp.2d at 695. In particular, no consideration was given to the adequacy of the FMLA's remedial scheme. Therefore, *Peterson* is not persuasive.

15. In fact, in her opposition brief, Kilvitis stated that "[d]ue to the adequacy of the relief offer [sic] by the FMLA, Ms. Kilvitis will not contest the Defendants' assertion that a Section 1983 claim against Luzerne County

Court of Common Pleas should be dismissed." (Pl's Opp. Br. (Dkt. Entry 12) at 2.) Thus, Kilvitis has conceded that the FMLA does provide a comprehensive remedial mechanism.

16. Although defendant County of Luzerne has not moved for judgment on the pleadings with respect to Count 2, *i.e.,* Kilvitis' § 1983 claim based upon a violation of the FMLA, it is clear that Count 2 does not present a viable claim. As such, judgment will be entered in favor of all of the defendants, including defendant County of Luzerne, on Count 2. As noted above, a court may raise *sua sponte* the failure to state a claim upon which relief may be granted. *See, e.g., Erie City of Retirees Ass'n v. City of Erie,* 838 F.Supp. 1048, 1049 (W.D.Pa.1993).

5) In all other respects, defendants' motion for judgment on the pleadings is denied.