Carla D. FRIZZELL, Plaintiff,

v.

SOUTHWEST MOTOR FREIGHT, INC., and Matthew Cacace, Defendants.

No. 1:95–CV–275.

United States District Court, E.D. Tennessee.

Nov. 20, 1995.

Gary R. Patrick, Cara J. Alday, Patrick, Beard & Richardson, P.C., Chattanooga, TN, for plaintiff.

Frank P. Pinchak, Leigh Anne Battersby, Witt, Gaither & Whitaker, Chattanooga, TN, for defendants.

## *MEMORANDUM*

COLLIER, District Judge.

This is a civil action brought by plaintiff, Carla D. Frizzell (hereinafter Frizzell) against defendants Southwest Motor Freight, Inc. and Matthew Cacace (hereinafter Cacace), alleging her civil rights were violated.

Before the Court is defendant Cacace's Motion to Dismiss the complaint (Court File No. 2). Plaintiff opposes the motion (Court File No. 6).

For the following reasons, the Motion to Dismiss will be **GRANTED**.

## I. FACTS

On July 25, 1995, plaintiff filed the instant action in the Chancery Court of Hamilton County, Tennessee. The complaint filed in state court alleged violations of the *Family and Medical Leave Act,* 29 U.S.C. § 2601, *et seq.,* and the *Tennessee Human Rights Act* (hereinafter referred to as THRA), Tenn. Code Ann. §§ 4–21–101, *et seq.* On August 11, 1995, defendants removed the case to federal court. On August 20, 1995, defendant Cacace filed a Motion to Dismiss the complaint as to him pursuant to *Fed.R.Civ.P.* 12(b)(6).

Plaintiff filed a response to the motion to dismiss. In her response, plaintiff argues the recently issued decision in *Arnold v. Welch,* No. 1:92–CV–562, 1995 WL 785572 (E.D.Tenn., July 5, 1995) (Edgar, J.), was incorrect. Plaintiff asks this Court to reject the decision in *Arnold* and hold that individual liability exists under the THRA.

## II. MOTION TO DISMISS

### A. *A Motion to Dismiss under Fed. R.Civ.P. 12(b)(6)*

■ A motion to dismiss under *Fed. R.Civ.P.* 12(b)(6) requires the Court to construe the complaint in the light most favorable to the plaintiff, accept all the complaint's factual allegations as true, and determine whether the plaintiff undoubtedly can prove no set of facts in support of the claims that would entitle relief. *Meador v. Cabinet for Human Resources,* 902 F.2d 474, 475 (6th Cir.), *cert. denied,* 498 U.S. 867, 111 S.Ct. 182, 112 L.Ed.2d 145 (1990); *see also Cameron v. Seitz,* 38 F.3d 264, 270 (6th Cir.1994). The Court may not grant such a motion to dismiss based upon a disbelief of a complaint's factual allegations. *Lawler v. Marshall,* 898 F.2d 1196, 1199 (6th Cir.1990); *Miller v. Currie,* 50 F.3d 373, 377 (6th Cir. 1995) (noting that courts should not weigh evidence or evaluate the credibility of witnesses). The Court must liberally construe the complaint in favor of the party opposing the motion. *Miller,* 50 F.3d at 377. However, the complaint must articulate more than a bare assertion of legal conclusions. *Scheid v. Fanny Farmer Candy Shops, Inc.,* 859 F.2d 434, 436 (6th Cir.1988). "[The] complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory." *Id.* (citations omitted).

## III. DISCUSSION

### A. *Tennessee Human Rights Act Claim*

■ Cacace argues that the complaint must be dismissed as to him, because it does not state a claim upon which relief can be granted. His argument rests on the recent decision of this Court in *Arnold v. Welch.* In *Arnold,* the Court held individuals who are not otherwise employers are not liable under the THRA.

In response to this motion plaintiff challenges the correctness of *Arnold.* Plaintiff's argument contains four components. First, plaintiff argues that the clear weight of Tennessee authority is contrary to the decision in *Arnold;* second, she argues that decisions from the United States Court of Appeals for the Sixth Circuit allow individual liability under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e through 2000e–7 (Title VII); third, she argues that cases from other circuit courts of appeal support her position; and last, she points to distinctions between the THRA and Title VII which she contends support the notion of allowing individual liability.

In deciding this motion the Court will examine the decision in *Arnold,* the precise language of the THRA and Title VII, the purpose of the THRA, and the applicable case law construing Title VII.

### 1. *Arnold v. Welch*

*Arnold* involved claims under both the THRA and Title VII. After the Court dismissed the claims against defendant Welch, Arnold requested reconsideration on the THRA claims. Arnold contended individual liability under the THRA existed and as support provided the Court with an unpublished Tennessee Court of Appeals decision, *Wood v. Emerson Electric Co.,* No. 01–A–9310–

CH–00467, 1994 WL 716270 (Tenn.Ct.App. Aug. 12, 1994). Arnold argued *Wood* established that individuals may in fact be liable under the THRA.

In reconsidering its decision, the Court examined *Wood* and another unpublished Tennessee Court of Appeals decision, *Gifford v. Premier Mfg. Corp.*, No. 18, 1989 WL 85752 (Tenn.Ct.App. Aug. 1, 1989). It decided the THRA and Title VII should be construed similarly with respect to the definition of employer and the liability of individuals. Since the clear weight of authority under Title VII is individual liability does not lie, the Court was of the opinion that the Tennessee Supreme Court, if called upon to decide this issue, would decide individuals are not liable under the THRA.

### 2. *Employer under THRA and Title VII*

#### (a) The THRA and Title VII should be similarly construed.

██ As was stated in *Arnold,* the THRA and Title VII should be similarly construed since both have the same purpose. "It is the purpose and intent of the general assembly by this chapter to (p)rovide for execution within Tennessee of the policies embodied in the federal Civil Rights Act( ) of 1964...." Tenn.Code Ann. § 4–21–101(a)(1). Thus, analysis under the THRA should be the same as under Title VII. *Trentham v. K–Mart Corp.*, 806 F.Supp. 692, 705 (E.D.TN.1991); *Bruce v. Western Auto Supply Co.*, 669 S.W.2d 95, 97 (Tenn.Ct.App. 1984).

#### (b) Definition of "Employer."

The term "employer" under the THRA is defined in Tenn.Code Ann. § 4–21–102(5). This definition reads:

> "Employer" includes the state, or any political or civil subdivision thereof, and persons employing eight (8) or more persons within the state, or any person acting as an agent of an employer, directly or indirectly;

Section 2000(e)(b) of Title VII defines "employer" as:

> ... a person engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year, and any agent of such a person....

Both the THRA and Title VII proscribe similar conduct with respect to employers. Title VII reads in pertinent part:

#### § 2000e–2. Unlawful employment practices

#### (a) Employer practices

It shall be an unlawful employment practice for an employer—

(1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or

(2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin.

The relevant portion of the THRA reads:

**4–21–401. Employer practices.**—(a) It is a discriminatory practice for an employer to:

(1) Fail or refuse to hire or discharge any person or otherwise to discriminate against an individual with respect to compensation, terms, conditions or privileges of employment because of such individual's race, creed, color, religion, sex, age or national origin; or

(2) Limit, segregate or classify an employee or applicants for employment in any way which would deprive or tend to deprive an individual of employment opportunities or otherwise adversely affect the status of an employee, because of race, creed, color, religion, sex, age or national origin.

As between these statutes, there is no meaningful difference in the language setting forth discriminatory conduct on the part of an employer.

### 3. *Standard for deciding state law*

Plaintiff set out the correct standard for the Court's determination of state law:

As this Court stated in the *Arnold* case, No. 1:92–CV–562, 1995 WL 785572 (July 5, 1995), "In ascertaining the law of a state, a federal court must look to the decisions of the highest court of the state." *Arnold, supra* p. 2, citing *Erie R. Co. v. Tompkins,* 304 U.S. 64, 78, 58 S.Ct. 817, 822, 82 L.Ed. 1188 (1938). This Court further stated, "If the state's highest court has not decided the applicable law, the federal court must predict how the highest state court would decide the law were it presented for decision." *Arnold, supra* p. 2, citing *Anderson Development Co. v. Travelers Indem. Co.,* 49 F.3d 1128, 1131 (6th Cir.1995); *Mahne v. Ford Motor Co.,* 900 F.2d 83, 86 (6th Cir.); *cert denied* 498 U.S. 941, 111 S.Ct. 349, 112 L.Ed.2d 313 (1990). Citing the U.S. Supreme Court in the case of *West v. AT & T Co.,* 311 U.S. 223, 237, 61 S.Ct. 179, 183, 85 L.Ed. 139 (1940), the Court further stated, "In predicting the decision of the highest state court, the federal court may not disregard the decision of an intermediate appellate state court unless it is convinced by other persuasive data-e.g., decisions from other jurisdictions, treatises, law review, commentaries, or the majority rule—that the highest state court would decide the matter otherwise." *Arnold, supra* p. 2.

(Plaintiff's Response, Court File No. 6, p. 7, ¶ 2).

Plaintiff points out that *West* requires the Court to look to the complete body of state law in reaching a decision on what the highest court of the state would decide. In support of her position, plaintiff points to the following language from *West* (Plaintiff's Response, Court File No. 6, pp. 8–9):

A state is not without law save as its highest court has declared it. There are many rules of decision commonly accepted and acted upon by the bar and inferior courts which are nevertheless laws of the state although the highest court of the state has never passed upon them. In those circumstances a federal court is not free to reject the state rule merely because it has not received the sanction of the highest state court, even though it thinks the rule is unsound in principal or that another is preferable. State law is to be applied in the federal as well as the state courts and it is the duty of the former in every case to ascertain from all the available data which the state law is and apply it rather than to prescribe a different rule, however superior it may appear from the viewpoint of "general law" and however much the state rule may have departed from prior decisions of the federal courts.

Where an intermediate appellate state court rests its considerable judgment upon the rule of law which it announces, that is a datum for ascertaining state law which is not to be disregarded by a federal court unless it is convinced by other persuasive data that the highest court of the state would decide otherwise. (Citation omitted).

*West, supra* 311 U.S. at 236–37, 61 S.Ct. at 183–84.

### 4. *Plaintiff's arguments*

Plaintiff argues *Arnold* incorrectly held an individual may not be found liable under the THRA because of:

... the clear weight of Tennessee authority to the contrary as set forth by the only Tennessee state appellate courts to have determined the exact issue, the Sixth Circuit decisions that have allowed individual liability in Title VII cases, the decisions of other jurisdictions allowing individual liability in the Title VII cases, and the distinctions between the THRA and Title VII.

The Court will address each of these reasons *seriatim.*

#### (a) *Tennessee authorities*

Plaintiff relies upon two unpublished Tennessee Court of Appeals decisions, *Wood* and *Gifford,* to support her request.

In *Wood,* the Tennessee Court of Appeals faced a sexual discrimination and sexual harassment case. On appeal the defendants argued, *inter alia,* the individuals could not be held liable because there were no "direct acts and physical touching of the plaintiff or

offensive remarks addressed directly to the plaintiff." 1994 WL 716270 at *13. The court commented the defendants had not challenged their specific liability at trial. Further, the court observed the defendants had waived this argument, thereby making the issue one not properly before the court for review. *Id.* The court of appeals, however, found if it were faced with that contention, such an argument was without merit. The court noted the THRA allows vicarious liability for aiding and abetting, stating:

> Under the Tennessee Human Rights Act, defendants Griva and Phillips are liable both for their own acts as agents of defendant Emerson, and for their acts in aiding and abetting others. Tennessee Code Annotated section 4–21–401 prohibits discrimination in "compensation, terms, conditions or privileges of employment" on the basis of sex by an employer. Tennessee Code Annotated section 4–21–102(4) defines an employer to include "any person acting as an agent of any employer, directly or indirectly." Tennessee Code Annotated section 4–21–301(2) provides that it is a discriminatory practice for a person to "aid, abet, incite, compel or command a person to engage in any of the acts or practices declared discriminatory by this chapter."

*Wood,* 1994 WL 716270 at 13–14.

Unlike in this case, the defendants in *Wood* failed to argue they could not be held liable because they were not "employers" as that term is used in the THRA. By not making that argument, the defendants did present the court of appeals with the responsibility of determining whether individuals were liable under the THRA. Accordingly, even if the defendants in *Wood* had properly raised the issue of the defendants' liability for "aiding and abetting others," the appellate court in *Wood* still would not have faced the issue raised here, that is, whether individuals not otherwise employers are liable under the THRA. The Court considers it significant the appellate court in *Wood* also did not consider federal authorities construing the term "employer" under Title VII. Nowhere in the quoted language from *Wood* is there any reference to Title VII or federal cases construing Title VII. The earlier ref-

erence to Title VII in *Wood,* before the quoted language, supported the court's position that a plaintiff need not be the direct object of the harassing conduct.

From the above, we see that the *Wood* court concluded it did not need to even address the defendants' arguments they were liable because they had not directly touched the victim. The court deemed this issue waived. Nevertheless, the court, for whatever reason, decided to respond to the issue presented. Had the issue been necessary for the court's decision, had the court squarely faced the issue raised here, and had it considered federal caselaw construing "employer," its decision might very well have been different.

*Gifford* is the second Tennessee case used by the plaintiff in support of her position. In *Gifford* the Court of Appeals reviewed the trial court's refusal to dismiss the complaint against an individual defendant filed under the THRA. The *Gifford* court considered the definition of "employer" under the THRA and upheld the trial court's decision. The court stated, "we conclude that the legislature intended that the definition of employer under the ... statute would likewise include the employer's agent." 1989 WL 85752 at *5.

This language does not provide this Court with a basis to conclude that the *Gifford* court has decided the issue before this Court. A logical reading of the *Gifford* holding indicates that an individual is liable under the statute as the agent of the employer. In other words, the individual is liable as a representative of the employer, not in his or her own right. In fact, such is the law under Title VII. *See Jones v. Continental Corp.,* 789 F.2d 1225, 1231 (6th Cir.1986).

The Court also notes *Gifford* does not consider the definition of "employer" in Title VII nor how the federal courts have construed the term.

Accordingly, the Court does not consider either *Wood* or *Gifford* a definitive indication of Tennessee law on the issue before the Court.

**(b)** *Sixth Circuit authorities*

Conceding that the Sixth Circuit has never ruled on this issue, plaintiff nevertheless contends dicta from four Sixth Circuit cases support her position that individual liability lies under Title VII. These cases are *York v. Tennessee Crushed Stone Association,* 684 F.2d 360, 362 (6th Cir.1982); *Jones v. Continental Corp.,* 789 F.2d 1225, 1231 (6th Cir. 1986); *Yates v. Avco Corp.,* 819 F.2d 630, 633 (6th Cir.1987); and *Romain v. Kurek,* 772 F.2d 281, 283 (6th Cir.1985).

The Court does not find any of these decisions persuasive. *York* simply announces the obvious and settled rule that an individual may be sued in a representative capacity. Thus, the examples given in *York* (the president of a college who acts as the agent of the board of trustees, the superintendent of a school district who acts on behalf of the school district, and the manager of the Employment Security Commission office who serves as a representative of the state commission) belie any suggestion individual liability would attach. The Court in *York* made this patently clear when it said "(t)hese cases simply stand for the proposition that (the named individual) could be sued in his official capacity as executive director, i.e. agent, of the association...." 684 F.2d at 362.

*Jones* involved whether attorney's fees were properly assessed against plaintiff's counsel in a race and sex discrimination case brought under Title VII and 42 U.S.C. § 1981. In analyzing the complaint and the plaintiff's theories, the Sixth Circuit noted claims against the individual defendants for sex discrimination could have been brought against them as "agents" of the employer. 789 F.2d at 1231. This is the same rule announced in *York.*

After reviewing both *Yates* and *Romain* the Court does not agree they provide support for plaintiff's position. In *Yates,* the issue simply was not addressed, and in *Romain,* the issue was whether an individual not named in the administrative EEOC or Michigan Civil Rights commission complaint could be sued.

**(c)** *Other circuit authorities*

Plaintiff also cites six cases from outside of the Sixth Circuit. Two of these cases are circuit court decisions, *Paroline v. Unisys Corp.,* 879 F.2d 100, 106 (4th Cir.1989), vacated in part on other grounds, 900 F.2d 27 (4th Cir.1990) (*en banc* ) (supervisor may be liable as an "employer"), and *Steele v. Offshore Shipbuilding, Inc.,* 867 F.2d 1311, 1316 n. 1 (11th Cir.1989) (supervisor may be "directly liable" for his actions that violate Title VII), and the remaining four are district court decisions, *Lamirande v. Resolution Trust Corp.,* 834 F.Supp. 526, 528 (D.N.H.1993); *Raiser v. O'Shaughnessy,* 830 F.Supp. 1134, 1137 (N.D.Ill.1993); *Wilson v. Gillis Advertising Co.,* 1993 WL 503117 (N.D.Ala.1993); and *Bridges v. Eastman Kodak Co.,* 800 F.Supp. 1172, 1179–80 (S.D.N.Y.1992).

The Court is of the view these cited cases, insofar as they can be read to support plaintiff's arguments, do not reflect the current state of the law. Eight of the circuits that have clearly addressed the issue have decided individual liability does not exist under Title VII. *See Tomka v. Seiler Corp.,* 66 F.3d 1295, 1313 (2d Cir.1995); *Greenlaw v. Garrett,* 59 F.3d 994, 1001 (9th Cir.1995); *United States E.E.O.C. v. AIC Security Investigations, Ltd,* 55 F.3d 1276, 1280–81 (7th Cir.1995); *Lenhardt v. Basic Institute,* 55 F.3d 377, 381 (8th Cir.1995); *Smith v. Lomax,* 45 F.3d 402, 403–04 & n. 4 (11th Cir. 1995); *Birkbeck v. Marvel Lighting Corp.,* 30 F.3d 507, 510–11 (4th Cir.), *cert denied* —— U.S. ——, 115 S.Ct. 666, 130 L.Ed.2d 600 (1994); *Garcia v. Elf Atochem North America,* 28 F.3d 446, 451 (5th Cir.1994); *Lankford v. City of Hobart,* 27 F.3d 477, 480 (10th Cir.1994); *Grant v. Lone Star Co.,* 21 F.3d 649, 651–53 (5th Cir.), *cert denied* —— U.S. ——, 115 S.Ct. 574, 130 L.Ed.2d 491 (1994); *Smith v. St. Bernards Regional Medical Center,* 19 F.3d 1254, 1255 (8th Cir.1994); *Miller v. Maxwell's Intern. Inc.,* 991 F.2d 583, 587–89 (9th Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 1049, 127 L.Ed.2d 372 (1994); and *Busby v. City of Orlando,* 931 F.2d 764, 772 (11th Cir.1991). The Court notes all of these cases are more current than those cited by plaintiff. Further, the Court was unable to locate a single circuit

court decision decided since 1990 supporting the plaintiff's position.

Furthermore, the two circuit court cases used by the plaintiff in support of her position, *Paroline* and *Steele,* are of questionable reliability with respect to this issue. More recent decisions from those two circuits, *e.g., Birkbeck* and *Busby,* respectively, undermine whatever persuasive authority these two cases may have had. Three of the district court decisions, *Raiser, Wilson* and *Bridges* also are of questionable authority in view of the decisions of their circuit courts. The Second, Seventh and Eleventh Circuits have rendered opinions subsequent to those district court decisions which undermine their continued validity. *See Tomka, AIC Security* and *Busby.*

Moreover, the argument the amendment to Title VII suggests an intent by Congress to allow individual liability is not persuasive. Courts squarely faced with the issue of individual liability generally consider the 1991 amendments to the Civil Rights Act of 1964 not to have altered the unavailability of damages against individuals. *See AIC Security,* 55 F.3d at 1281 (noting "the Civil Rights Act of 1991 *further* shows that Congress never intended individual liability") (emphasis added). The Seventh Circuit first noted, as strictly defined in Title VII, "employer" did not contemplate individual liability. *Id.* Nor did the 1991 amendments effect a subtle change to that definition. *Id.* Second, the Seventh Circuit observed the sliding scale of caps on available compensatory and punitive damages, based upon an employer's number of employees, further demonstrated the lack of individual liability. *Id. See also Garrett v. Clarke County Bd. of Educ.,* 857 F.Supp. 949, 953 (S.D.Ala.1994); *Saville v. Houston County Healthcare Auth.,* 852 F.Supp. 1512, 1522–23 (M.D.Ala.1994); *Smith v. Capitol City Club of Montgomery,* 850 F.Supp. 976, 978–80 (M.D.Ala.1994). *But see Wilson v. Gillis Advertising Co.,* 1993 WL 503117 (N.D.Ala.1993) (finding individual liability); *Bridges v. Eastman Kodak Co.,* 800 F.Supp. 1172, 1179–80 (S.D.N.Y.1992).

Judge Higgins in *Wilson v. Wayne County,* 856 F.Supp. 1254, 1264–65 (M.D.TN.1994) aptly stated the point:

[T]his court cannot ignore what is obvious. The greatest weight of recent legal authority, including the holdings of the courts of appeals of other circuits, other district courts in this circuit, and even other judges within this district, does not recognize individual liability for Title VII violations.

### (d) *Distinction between THRA and Title VII*

Without belaboring what is obvious, the differences in language in the THRA and Title VII are not such that different analyses or interpretations are required. In view of the stated policy in the THRA itself, different analyses and interpretations would inevitably lead to widely divergent outcomes. Nothing in the THRA itself or in state caselaw suggests such an outcome was desired.

In *Lenhardt,* the Eighth Circuit construed the definition of "employer" as used in the Missouri Human Rights Act (MHRA). The MHRA is similar to the THRA. The Eighth Circuit used the same analysis as here and decided the definition of employer under the MHRA was the same as under Title VII. The court held there was no individual liability. *Lenhardt,* 55 F.3d at 379–80. Since the court considered a state statute similar to the THRA, *Lenhardt* has particular significance to the case *sub judice.*

Further, plaintiff's argument that remedies in the THRA, such as damages for "injuries, including humiliation and embarrassment, caused by the discriminatory practice, plus costs and attorneys' fees" distinguish the THRA from Title VII is unavailing. Under the 1991 amendments to the Civil Rights Act, 42 U.S.C. §§ 1981a(a)(1) and (b)(3), damages are permissible under Title VII for emotional pain, suffering, mental anguish, and other nonpecuniary losses. *Munday v. Waste Management of North America, Inc.,* 858 F.Supp. 1364, 1376 (D.Md. 1994). Attorneys' fees are also available under Title VII. 42 U.S.C. 2000e–5(k). Thus, instead of distinguishing between the THRA and Title VII, plaintiff's argument reinforces the similarities of the two statutes.

### 5. *Arnold was correctly decided*

■ Based upon the above analysis the Court concludes *Arnold* was correctly decided. The rationale offered in *Arnold* for limiting liability to employers is compelling. This same rationale, e.g., the intent of Congress was to incorporate respondeat superior principles under Title VII, the remedies under Title VII are remedies an employer, not an individual would provide, and individual liability under Title VII is inconsistent with the limitation of its reach to employers with fifteen or more employees, compels this Court to hold that under the THRA, individuals not otherwise meeting the statutory definition of "employers" are not liable. Accordingly, the Court will GRANT defendant Cacace's Motion to Dismiss.

### B. *FAMILY AND MEDICAL LEAVE ACT CLAIMS*

■ Left are claims under the *Family and Medical Leave Act.* Cacace contends the complaint only names Southwest Motor Freight under this claim. Although the complaint states the actions taken by Southwest Motor Freight violate the *Family and Medical Leave Act,* it does demand damages against "(d)efendants" for the violations. Arguably, by this language, plaintiff intended to include Cacace in these claims. However, the act itself only makes an "employer" liable. 29 U.S.C. § 2617(a)(1). The statute defines an employer in section 2611(4):

The term "employer"—

(i) means any person engaged in commerce or in any industry or activity affecting commerce who employs 50 or more employees for each working day during each of 20 or more calendar workweeks in the current or preceding calendar year;

(ii) includes—

(I) any person who acts, directly or indirectly, in the interest of any employer to any of the employees of such employer; and

(II) any successor in interest of an employer; and

(iii) includes any "public agency", as defined in section 203(x) of this title.

For the reasons stated in *Arnold,* this Court concludes the term "employer" as used in the *Family and Medical Leave Act* should be construed the same as the term "employer" is construed under Title VII. Under that construction, the term "employer" does not allow liability to be imposed upon individuals who are not otherwise employers. Accordingly, to the extent the complaint can be read to allege violations of the *Family and Medical Leave Act* against Cacace, the Court will **GRANT** his Motion to Dismiss.

## IV. CONCLUSION

This Court is of the opinion the Tennessee Supreme Court when squarely faced with the issue will determine the THRA and Title VII should be construed similarly and since the clear weight of authority under Title VII is that individuals not otherwise "employers" are not liable, the Supreme Court will hold the THRA also does not allow individual liability. Accordingly, pursuant to the Court's earlier ruling in *Arnold,* the Court will **GRANT** Cacace's motion with respect to claims under the THRA. For the reasons stated above, the Court will also **GRANT** Cacace's motion with respect to claims under the *Family and Medical Leave Act.* Since no other claims remain against Cacace, the claims against him will be **DISMISSED WITH PREJUDICE.**

An order will enter.

### *ORDER*

In accordance with the accompanying Memorandum, the Motion to Dismiss of defendant Matthew Cacace (Court File No. 2) is hereby **GRANTED,** and all claims asserted against defendant Cacace are hereby **DISMISSED WITH PREJUDICE.** Remaining for adjudication are all matters pertaining to defendant Southwest Motor Freight, Inc.

**SO ORDERED.**